IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CURTIS WILLIAM WITMER,<br><br>Defendant. | CR 24-105-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Curtis William Witmer's Motion to Suppress filed on September 30, 2024. (Doc. 21). Originally, the Court set a suppression hearing for November 22, 2024. (Doc. 28). Upon two separate motions by the parties, the Court reset the hearing to February 14, 2025. (Docs. 29, 31, 32). Though the Court typically does not issue an order until after the hearing, it has further reviewed the parties briefing and found that an order is necessary to determine whether Witmer is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

In his Motion, Witmer alleges that the officer's affidavit included with the search warrant application for Witmer's truck omitted and misrepresented material facts and therefore, does not meet the probable cause standard. (Doc. 21 at 9). As such, Witmer requests that the evidence found in his truck be suppressed. (*Id.*).

1

Though Witmer does not explicitly request a *Franks* hearing, he specifically challenges the "truthfulness of factual statements made in [the] affidavit supporting the warrant" because he alleges an officer's intentional omission of and misrepresentation of witness statements. *See Franks*, 438 U.S. at 155; (Doc. 22).

Given the nature of Witmer's challenge and his argument under the *Franks* framework, the Court finds that *Franks* applies. Accordingly, before a hearing, it must determine whether Witmer made a "substantial preliminary showing" that the affidavit contained false or recklessly untrue statements material to a finding of probable cause. *Franks*, 438 U.S. at 155. If Witmer meets this burden, the Court must hold a hearing to test the veracity of the affiant's statements. If Witmer does not meet his burden, then he may not challenge the veracity of the affidavit.

The Government opposes Witmer's Motion arguing he cannot meet his burden under *Franks* because the officer did not recklessly or intentionally misrepresent material information in the affidavit. (Doc. 26 at 8). Additionally, the Government argues that the omitted statements had no bearing on finding probable cause. (*Id.* at 9–14). In the alternative, the Government argues that even if the omitted statements were included, the statements would bolster a probable cause finding.

For the following reasons, the Court denies Witmer's Motion to the extent he requested a *Franks* hearing.

2

I.   **Factual Background**

On February 28, 2024, around 11:35 p.m., Shooters Sports Bar Grill and Casino bartender, Riley Patterson, called 911 dispatch and reported that "a guy [was] pulling a gun in the [Shooters'] parking lot . . . he [was] waving it around [and] he [was] in his truck." (Doc. 24, exh. D, Phone 1 at 00:11–00:19). On the call, Patterson identified the truck as a silver Ford Ranger and identified "the guy" as Curtis Witmer. (*Id.* at 00:30–01:21). When dispatch asked Patterson if Witmer had threatened him with a firearm, Patterson responded, "He was getting into it with a couple younger kids. I wasn't out there. I just saw him pull the gun." (*Id.* at 00:51–01:00). The dispatcher gathered other relevant information and law enforcement arrived at the Shooters parking lot soon after. (*See* Docs. 23, 23-1, 23-2).

Earlier that evening, Witmer and his friend, David Bowen, were playing pool inside Shooters' bar. (Doc. 24, exh. G, Bowen at 01:42–01:45). A group of young men[1] were also at the pool tables. Witmer and Bowen played against two of the young men when the men started "causing problems." (*Id.* at 01:45–02:07). Among other threats, the men told Witmer that they would "take him out into the parking lot and beat his ass." (*Id.* at 02:07–02:23). Patterson noticed that Witmer and the men had begun arguing. (Doc. 24, exh. E, Patterson at 00:38–00:43). After several

---

[1] Throughout the witness interviews, police reports, and briefing, the young men are referred to as "Army guys," "guys," "young guy(s)," "men," "patrons," and "kids." The evidence is unclear as to how many young men were involved. For consistency, the Court will use the terms "young men" or "men."

3

attempts to subdue the situation, Patterson told Witmer and Bowen that they should leave the bar. (*Id.* at 00:43–01:10). Witmer and Bowen eventually exited the bar, but Witmer remained in the parking lot near his truck for approximately 10–15 minutes. (*Id.* at 01:10–02:05). Bowen sat in the passenger seat of the truck. (Doc. 24, exh. G, Bowen at 02:55–02:58).

When the young men exited the bar and walked through the parking lot, Patterson heard Witmer say something to the men and when Patterson looked over, "it looked like [Witmer] had pulled a gun" and pointed it toward the men. (Doc. 24, exh. E, Patterson at 02:05–02:12). According to Patterson, Witmer was standing outside the truck on the driver's side near the tailgate. (*Id.* at 02:31–00:43). Patterson was "almost positive," he saw a handgun although he "could [not] make out much more than that." (*Id.* at 02:16–02:22). Moments after the incident, Patterson called 911.

Before law enforcement arrived, Elena Gutierrez-Paz had pulled into the Shooters parking lot when Witmer was outside at his truck. When she exited her vehicle, she saw "the older man at the pickup having an altercation with the younger man." (Doc. 24, exh. F, Gutierrez-Paz at 00:59–01:06). She heard "the older man [say to the younger man] 'I got my 9 mm. Don't make me use it.'" (*Id.* at 01:09–01:16). She heard the younger man respond, "Okay, well, if you're going to use it, then use it." (*Id.* at 01:17–01:22). After hearing the exchange, she immediately

4

walked into the bar. (*Id.* at 01:22–01:25). Gutierrez-Paz never saw a firearm. (Doc. 23-1 at 2). As Bowen sat in the passenger seat, the young men "kept coming out the door, hollerin' threats and stuff." (Doc. 24, exh. G, Bowen at 02:44–03:04). Bowen could not recall whether Witmer reacted to the threats. (*Id.* at 03:19–03:21). While Witmer stood outside the truck, Bowen remained in the truck and did not engage with the men. (*Id.* at 02:56–03:01). After the alleged threats between Witmer and the men, the young men returned to the bar and asked Patterson if he saw what happened. (Doc. 24, exh. E, Patterson at 04:06–04:16). Patterson replied that he had seen it and told them the "cops were on their way." (*Id.*).

Several law enforcement units were dispatched to the Shooters parking lot "regarding a weapons call for service." (Doc. 23 at 2). Officer Cofield arrived at the scene and contacted responding units. (*Id.*). He saw Witmer near the driver's side of the pickup, holding a partially filled glass of beer. (*Id.*). He saw Bowen sitting inside the front passenger seat. (*Id.*). "[Witmer] appeared intoxicated, paced back and forth, and repeatedly put his arms down towards his waistband." (*Id.*). Witmer reached into the bed of the truck and did not follow commands. (*Id.*). "[Witmer's] speech was slurred, and he walked in a manner consistent with someone under the influence of alcohol or drugs." (*Id.*). Because he failed to follow commands, "[Witmer] was struck with a less-than-lethal bean bag round . . . due to the significant risk of physical bodily injury by a firearm as reported by the

5

complainant." (*Id.*). Bowen, still in the passenger seat, was ordered out of the vehicle. (*Id.*). According to Officer Cofield, Bowen appeared intoxicated and was taken into custody for outstanding warrants. (*Id.*). Ultimately, Witmer was also taken into custody. (*Id.*).

After the scene de-escalated, law enforcement interviewed Patterson, Gutierrez-Paz, and Bowen. (Docs. 23, 23-1, 23-2). Pertinent here, Officer Sparrow interviewed Bowen while in custody. (Doc. 23 at 3). When Officer Sparrow told Bowen that law enforcement received reports of a gun, Bowen said, "I don't got no gun." (Doc. 24, exh. G, Bowen at 03:45–03:52). Officer Sparrow asked whether a gun was ever involved to which Bowen replied, "no." (*Id.* at 03:52–03:57). Officer Sparrow asked why people might say they saw a gun to which Bowen responded, "because they want [Witmer] to get in trouble. I don't know. I didn't have a gun." (*Id.* at 03:57–04:17).

Officer Cofield interviewed Patterson. When pressed about the description of the firearm, Patterson replied that he was "95% sure" he saw a gun because "no one can be 100%" (*Id.* at 03:19–03:30). Officer Cofield also asked Patterson for access to video surveillance. (Doc. 23 at 3). Patterson did not have access to the surveillance but informed Officer Cofield that it would be available the following morning when his manager returned. (*Id.*). After reviewing the evidence, it is still unclear who the alleged victims were and when they left the bar. According to

6

Patterson, the men could not be identified by their tab because they paid with cash and left before officers arrived. (Doc. 24, exh. E, Patterson at 05:22–05:31).

Later, Officer Cofield applied for a search warrant of Witmer's truck, which was granted by Montana State District Court Judge Colette Davies around 4 a.m. on February 29, 2024. (Doc. 23 at 3). Officer Cofield executed the search warrant and discovered a silver Interarms revolver and 50 PMC .38 special ammo. (*Id.*).

In his application for the search warrant, Officer Cofield wrote in pertinent part:

> On 02/28/2024, at approximately 2336 hours, your Affiant responded to Shooters Sports Bar and Grill Casino located at 1600 Ave D in Billings Montana in references to a weapons call for service. The complainant advised the service request was related to a male suspect named Curtis Witmer who was approximately 5'11,["] 190 pounds, wearing a jacket and jeans and was seen "waving a gun around" in the parking lot after getting into an argument with patrons inside the bar.

(Doc. 27-1 at 3).

Officer Cofield went on:

> Your Affiant obtained a statement from the complainant who advised Curtis was asked to leave the business but waited in the parking lot for the victims to also exit for approximately fifteen minutes before he pointed what appeared to be a firearm in their direction.
>
> The victims of the incident fled the area; however, the business was filled with patrons when the incident took place and created a substantial risk of death or serious bodily injury because Curtis pointed what the complainant reasonably believed was a firearm towards the victims who were standing outside the front entrance located on the southside of the building.

>Curtis was also the subject of an officer caution documented in 2013 during which time he was reportedly seen driving an '89 Ford F-250 with Great Fall[s] plates and reportedly threatened an individual and pulled a gun out of his jacket/hoodie pocket and stated "snitches get stitches."

(*Id.* at 4).

Finally, Officer Cofield stated:

>This affidavit is based upon the information your Affiant has personally gained through training and experience and upon information provided to your Affiant by other individuals, including law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, your Affiant has not included each and every fact concerning this investigation. Instead, your Affiant has set forth only the facts that your Affiant believes are necessary to establish probable cause to obtain Application for Search Warrant the evidence sought through this warrant.

(*Id.* at 6).

## II.   Legal Standard

A pretrial challenge to the introduction of evidence at trial is generally considered pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure. "In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, [the United States Supreme Court] conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Weeks v. United States*, 232 U.S. 383 (1914)).

8

### III. Discussion

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit. *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985).

Criminal defendants have a limited right pursuant to the Fourth and Fourteenth Amendments to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. *See Herring v. United States*, 555 U.S. 135, 145 (2009). Under *Franks v. Delaware*, a criminal defendant is entitled to a hearing when he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and the allegedly false statement is "necessary to the finding of probable cause." 438 U.S. at 155–56.

The Ninth Circuit has further clarified when the Court should grant a request for a *Franks* hearing:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that

9

the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

*United States v. DiCesare*, 765 F.2d 890, 894–95 (9th Cir. 1985) (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)).

The limited right of criminal defendants to challenge false statements in a warrant affidavit under *Franks* also allows criminal defendants to "challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." *Stanert*, 762 F.2d at 780–81. To warrant a *Franks* hearing for an alleged material omission, the defendant must first make a "substantial preliminary showing that the affidavit contained a misleading omission and that the omission resulted from a deliberate or reckless disregard for the truth" and, second, must demonstrate "that had there been no omission, the affidavit would have been insufficient to establish probable cause." *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994). Omissions are material only when the omitted facts "cast doubt on the existence of probable cause." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992).

A defendant does not need to show clear proof of deliberate or reckless omissions. *United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). However, the offer of proof showing intentionality or recklessness must be "substantial." *Franks*, 438 U.S. 155–56. "Allegations of negligence or innocent

10

mistake are insufficient" to qualify for an evidentiary hearing. *Id.* at 171. Furthermore, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72.

Underlying the Court's analysis is the well-settled rule that "[i]n doubtful cases, preference should be given to the validity of the warrant." *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987) (quoting *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986)) (alteration in original). This deference extends to the affidavit underlying the warrant, for the "inquiry [of whether a defendant has made a substantial preliminary showing of deliberate or reckless falsity] begins with a presumption that an affidavit in support of a search warrant is valid." *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) (citing *Franks*, 438 U.S. at 171).

Here, Witmer alleges that Officer Cofield's affidavit did not support a finding of probable cause because Officer Cofield omitted and misrepresented pertinent material facts. The allegations include: (1) omitting Gutierrez-Paz's statements that she did not see a gun; (2) omitting Bowen's statements that he did not see or have a gun; (3) omitting the fact that Officer Cofield failed to secure surveillance footage; and (4) misrepresenting Patterson's statements by quoting him as seeing Witmer "waving a gun around" when he was "only 95% [] sure that Witmer even had a gun in his possession." (Doc. 22 at 7–8).

11

To be granted a *Franks* hearing, Witmer must show that the affidavit, scrubbed of the false statements and supplemented by the alleged omissions, would be insufficient to support a finding of probable cause. *See Stanert*, 762 F.2d at 782. Probable cause exists if the affidavit provides a substantial basis for believing that criminal activity might have been occurring at the place to be searched. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005). "Probable cause requires a fair probability, but not a certainty, that a search would yield evidence of crime." *Id.* at 1217 (citing *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983)).

    A.    *Gutierrez-Paz's Statements, Bowen's Statements, and Video Surveillance*

Witmer first argues that Officer Cofield ignored Gutierrez-Paz's and Bowen's statements indicating that Witmer did not have a gun. (Doc. 22 at 7–8). Additionally, Officer Cofield never secured the video surveillance that would have shown the alleged victims and recorded the incident in the parking lot. (*Id.* at 8–9). Because Officer Cofield omitted this information in his affidavit, Witmer argues the warrant fails to establish probable cause that a firearm would be found in Witmer's truck. (*Id.* at 9–10).

In response, the Government argues that Gutierrez-Paz's and Bowen's statements have no bearing on the probable cause analysis. (Doc. 26 at 9–12). Alternatively, the Government argues that even if the omitted statements were included, the inclusion would have only bolstered a probable cause finding. (*Id.* at

13). The Government does not respond to Witmer's allegations regarding the surveillance footage.

As stated above, Witmer must meet five requirements before the Court grants a *Franks* hearing. *See DiCesare*, 765 F.2d at 894–95. The Court finds Witmer has met the first, third and fourth requirements. He specifically alleges the false portions of the affidavit, namely—the omission of witness statements indicating they did not see a gun and the failure to include information regarding video surveillance. He offers multiple witness statements and police reports as proof that the witnesses stated they had not seen a gun and that the police did not obtain the video surveillance before applying for the search warrant. And he challenges only Officer Cofield's truthfulness.

As for the second and fifth requirements, the Court will examine the facts more closely. For the second requirement, Witmer must prove by a preponderance of evidence that there was a knowing and intentional falsehood or a reckless disregard for the truth. *Franks*, 738 U.S. at 171–72. Here, Witmer argues that Officer Cofield "ignored" Gutierrez-Paz's and Bowen's statements because he did not include them in his affidavit. (Doc. 22 at 7). He further argues that Officer Cofield "failed" to secure the video surveillance. (*Id.* at 9). Witmer implies a knowing and intentional falsehood. However, Witmer offers little proof of Officer Cofield's knowledge and intent to falsify the affidavit. Though Witmer does not

need to show clear proof, the proof must be "substantial." *See Chesher*, 678 F.2d at 1362; *Franks*, 438 U.S. 155–56.

There are three facts that are supported by the evidence and omitted in Officer Cofield's affidavit. First, Gutierrez-Paz told law enforcement that she heard the older man by the pickup truck say he had a 9mm gun, however, she never saw the gun before she walked inside the bar. Second, Bowen sat in Witmer's truck and stated that he did not see Witmer with a gun nor did he think Witmer had a gun. Third, Officer Cofield knew that the alleged victims left Shooters before law enforcement arrived but did not secure video surveillance before applying for the search warrant.

As the affiant, Officer Cofield knew that Gutierrez-Paz and Bowen did not see a firearm. As Patterson's interviewer, Officer Cofield knew the video surveillance was not available until the following morning. However, it is difficult to reconcile Officer Cofield's actual knowledge with the intent of omitting certain information. It is certainly possible that Officer Cofield thought he had enough evidence to support a probable cause finding without the statements and the video surveillance. As the Government points out and as stated in Officer Cofield's affidavit, "your Affiant has set forth only the facts that your Affiant believes are necessary to establish probable cause . . . ." (Doc. 26 at 6; Doc. 27-1 at 6). It is also

14

possible that the omissions were a result of negligence or innocent mistake. *See Franks*, 438 U.S. 155–56.

The burden is on Witmer to substantially prove that Officer Cofield knowingly and intentionally omitted material facts. Though the Court is aware of the omissions through the supporting exhibits, it is difficult to determine whether Officer Cofield deliberately omitted the preceding facts to falsify the affidavit without a more substantial showing of an intent to do so. In a sense, the proof is not in the pudding. From the Court's perspective, Officer Cofield likely believed he had enough facts without the alleged omissions to meet the probable cause standard. Nevertheless, without more evidence from Witmer otherwise, there is nothing in the record demonstrating Officer Cofield's intent to falsify the affidavit by leaving out the preceding facts. Thus, the Court finds that Witmer has not proven by the preponderance of the evidence that Officer Cofield deliberately falsified the affidavit by omitting facts.

For the fifth requirement, the defendant must show that the omissions were essential to the finding of probable cause. In other words, "had there been no omission, the affidavit would have been insufficient to establish probable cause." *Kyllo*, 37 F.3d at 529. Omissions are material only when the omitted facts "cast doubt on the existence of probable cause." *Garza*, 980 F.2d at 551. Witmer argues that if Officer Cofield had included the omitted witness statements and had disclosed

that he failed to obtain the video surveillance, then there would not have been a probable cause finding. (Doc. 22 at 9). Conversely, the Government argues the omitted witness statements have no bearing on probable cause. (Doc. 26 at 9–12). In the alternative, the Government argues that the statements bolster a probable cause finding. (*Id.* at 13).

The Court finds that had the omissions been included, there would be enough facts to support the finding of probable cause. Probable cause exists if the affidavit provides a "substantial basis" for believing that criminal activity may have been occurring at the place to be searched. *See Martinez-Garcia*, 397 F.3d at 1216. Under the totality of the circumstances, "[p]robable cause requires a fair probability, but not certainty, that a search would yield evidence of crime." *Id.*

Here, Officer Cofield's affidavit explained that law enforcement responded to Shooters because a complainant (Patterson) had seen a man (Witmer) near his truck in the parking lot "waving a gun around." When Officer Cofield arrived, he found Witmer standing at the rear driver's side of his pickup truck holding a glass half-filled with beer and appearing intoxicated. Witmer paced back and forth and reached toward his waist band as well as into the bed of the pickup truck, which had not been cleared for weapons. After Witmer was arrested, Officer Cofield learned that Witmer was also a subject of an officer caution document from 2013 when Witmer reportedly threatened an individual with a gun.

Considering this information along with the omitted information, the Court concludes that the "totality of circumstances" still indicates probable cause to search Witmer's vehicle. At the outset, the Court finds that Officer Cofield's decision to not disclose the existence of video surveillance in his affidavit is not material to the probable cause analysis. The surveillance may have shown that Witmer had a gun, and it may not have. Nevertheless, the probable cause analysis is unaffected by Officer Cofield's decision to exclude the fact that video surveillance would later become available regardless of what it may have shown.

Next, though Gutierrez-Paz did not see a gun, her statement corroborates Patterson's statement—that he heard Witmer say something to the young men before pulling a gun out. It further corroborates Patterson's statements and police officer observations that Witmer stood near the bed of his pickup truck on the driver's side. So, even though Gutierrez-Paz did not see a gun, her statements would otherwise provide an additional basis for believing that criminal activity might have been occurring in Witmer's truck. *See Martinez-Garcia*, 397 F.3d at 1216.

Finally, Bowen's statement that he did not believe Witmer had a gun could go either way in a probable cause analysis. Bowen's statement could mean that he did not see a gun because he sat facing forward in the passenger seat while Witmer stood outside near the back of the truck. Alternatively, Bowen's statement could mean that Witmer did not have a gun. Nevertheless, the combination of Patterson's

statements, Gutierrez-Paz's statements, and law enforcement's personal observations outweigh any doubt that Bowen's statements may cast upon the finding of probable cause. Rather, the totality of the facts, including the omissions, support a fair probability that the search of Witmer's truck would yield evidence of the crime.

In sum, Witmer cannot prove two of the five requirements to warrant a *Franks* hearing. Therefore, because he cannot meet his preliminary burden, his Motion is denied to the extent he requested a *Franks* hearing. Consequently, he may not challenge the veracity of Officer Cofield's affidavit based on the omitted statements and the omitted disclosure regarding the video surveillance.

### B.   Patterson's Statements

Witmer also argues that Officer Cofield misrepresented Patterson's statement "which misled the judge into believing that Patterson saw Witmer 'waving a gun' in the parking lot" when he was "only 95% [] sure that Witmer even had a gun in his possession." (Doc. 22 at 7–8). In response, the Government first asserts the Officer Cofield merely repeated a statement made during the 911 call and second, Officer Cofield's use of Patterson's statement is neither an intentional falsehood nor reckless disregard for the truth. (Doc. 26 at 9).

Here, the Court finds Witmer has met the first, third, fourth, and fifth requirements. He specifically alleges the false portions of the affidavit, namely—the alleged misrepresentation that Patterson stated he saw Witmer "waving a gun"

in the parking lot. He offers witness statements, the 911 dispatch call, and police reports as proof. He challenges only Officer Cofield's truthfulness, and the challenged statement is necessary to finding probable cause.

The issue here is whether Witmer has met the requirement that the alleged false statement was deliberately or recklessly made. The Court finds that the statement was neither false nor deliberately or recklessly made. The Court agrees with the Government that the quoted statement was merely repeated from the 911 dispatch call. (Doc. 24, exh. D, Phone 1 at 00:11–00:19 ("a guy [was] pulling a gun in the [Shooters'] parking lot . . . he [was] waving it around [and] he [was] in his truck.")). The Court further agrees with the Government that "Officer Cofield's quotation from Patterson is not an intentional falsehood nor [] done with a reckless disregard for the truth." (Doc. 26 at 9). It was, as the Government stated, exactly "what Patterson relayed on the call." As for the allegation that Patterson was only "95% sure" he saw a gun, Officer Cofield stated in his affidavit that the complainant saw "what appeared to be" and "reasonably believed" to be a firearm. This language demonstrates Officer Cofield's attempt to be accurate, not deliberately or recklessly false.

In sum Witmer, cannot meet the preliminary burden to warrant a *Franks* hearing. Thus, his Motion is denied to the extent he requested a hearing and he may

not challenge the veracity of Officer Cofield's affidavit on the basis of the alleged misrepresentation.

## IV. Conclusion

IT IS SO ORDERED that Defendant Curtis William Witmer's Motion to Suppress (Doc. 21) is DENIED to the extent he requested a *Franks* hearing. Therefore, Witmer is not entitled to challenge the veracity of Officer Cofield's affidavit to show that law enforcement lacked sufficient facts to support a finding of probable cause. As such, the evidence will not be suppressed on these grounds.

IT IS FURTHER ORDERED that Witmer must notify the Court whether he would like to proceed with the suppression hearing scheduled for February 14, 2025.

DATED this 31st day of January, 2025.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge